**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Chris Marron, an Individual, and Maryann Daker, an Individual, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Case No. |
| v. | (JURY TRIAL DEMANDED) |
| Clearview AI, Inc., a Delaware Corporation, Hoan Ton-That, an Individual; Richard Schwartz, an Individual; and CDW Government LLC, an Illinois Company, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Chris Marron and Maryann Daker (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, bring this class action complaint against Clearview AI, Inc., ("Clearview" or "Defendant"), Hoan Ton-That, an Individual, Richard Schwartz, an Individual (collectively with Hoan Ton-That, "Individual Defendants") and CDW Government LLC, an Illinois Company ("CDW") (collectively with Clearview and Individual Defendants, "Defendants") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and in support thereof allege as follows:

### NATURE OF ACTION

1.       Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal conduct of Defendants in collecting, storing, using, selling, and

distributing Plaintiffs' and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (collectively, "biometrics") without their knowledge or informed written consent, in direct violation of BIPA.

2.      Specifically, Clearview has scraped[3] over 3 billion facial images from the internet and scanned the facial images' biometrics.  It then built a searchable database of the scanned images and biometrics, enabling users to utilize its proprietary facial recognition software to instantly identify an unknown individual with only a photograph.  Defendants have then sold and otherwise given access to Plaintiffs' and Class Members' searchable biometrics to hundreds of law enforcement agencies, private entities, and individuals.  In profiting handsomely from their enterprise, Defendants have taken no steps to comply with any provision of BIPA.

3.      In direct violation of each of the provisions of § 15(a), § 15(b), § 15(c), and § 15(d) of BIPA, Defendants are actively collecting, storing, using, disclosing, and profiting from – without providing notice, obtaining informed written consent, or published data retention policies – the biometrics of millions of unwitting individuals whose faces have appeared across the internet.

4.      Plaintiffs bring this action individually and on behalf of all others similarly situated to prevent Defendants from further violating the privacy rights of those individuals

---

[1]  A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry," among others.

[2]  "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual.

[3]  Scraping is the practice of automatically extracting and saving information from a website, which practice may include downloading individual web pages or an entire website.  The downloaded content may include the text or images from the pages, the full HTML, or both the HTML and image from each web page.

appearing in Clearview's database and who are at risk of being included in its database, and to recover statutory damages for Defendants' unauthorized collection, storage, use, sale, and disclosure, of these individuals' biometrics in violation of BIPA.

## PARTIES

5.     Plaintiff Chris Marron is, and has been at all relevant times, a resident and citizen of Illinois.

6.     Plaintiff Maryann Daker is, and has been at all relevant times, a resident and citizen of Illinois.

7.     As set forth in more detail below, Defendant Hoan Ton-That is a founder and the CEO of Clearview.

8.     As set forth in more detail below, Defendant Richard Schwartz is a founder and, upon information and belief, an officer, director, and/or principal of Clearview.

9.     Defendant Hoan Ton-That and Richard Schwartz have conspired in furtherance of Defendants' illegal scheme to violate BIPA as alleged more fully in this complaint.

10.     Defendant Clearview AI, Inc. is a Delaware corporation with its headquarters in New York City, New York.

11.     Clearview and the Individual Defendants have obtained photographs of Illinois residents, taken in Illinois, and uploaded from computers in Illinois to social media accounts that are managed from within Illinois.  Through the harvesting of biometric information and identifiers from those photographs, and the collection, capture, obtainment, disclosure, redisc' osure, sale, and dissemination of such biometric information, Clearview and the Individual Defendants have exposed residents of Illinois to ongoing privacy risks within Illinois.   Defendants knew that their collection, capture, obtainment, disclosure, redisc' osure, sale, and dissemination of impacted

individuals' biometric identifiers and information would injure Illinois citizens. Moreover, these defendants own and operate Clearview's database and its facial recognition software, and market their products to Illinois-based companies and agencies, including but not limited to the Chicago Police Department, the Springfield Police Department, the Illinois Secretary of State's Office, and other Illinois entities.

12. Defendant CDW Government LLC is an Illinois company headquartered in Vernon Hills, Illinois. CDW provides equipment and services to local government agencies. At all relevant times, CDW has been Clearview's agent to advertise, license, and sell Clearview's proprietary facial recognition platform to third parties located within Illinois, including, upon information and belief, to the Chicago Police Department.

## JURISDICTION AND VENUE

13. This is a class action complaint for violations of BIPA, seeking statutory and actual damages.

14. This Court has jurisdiction over this action under 28 U.S.C. §1332(d)(2) because diversity exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class.

15. This class action is brought on behalf of all Illinois individuals whose biometric information was created, collected, stored, used, sold, or disclosed by Defendants.

16. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because a substantial amount of the acts and omissions giving rise to the claims occurred in Illinois.

## FACTUAL BACKGROUND

### I. Biometric Technology Implicates Consumer Privacy Concerns

17.     "Biometrics" refers to unique physical characteristics used to identify an individual.  One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning a human face or an image thereof, extracting facial feature data based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database."  If a database match is found, an individual may be identified.

18.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

19.     The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns.  During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, U.S. Senator Al Franken stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties."[4]  Senator Franken noted, for example, that facial

---

[4]     *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1

recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[5]

20.     The Federal Trade Commission ("FTC") has raised similar concerns, and released a "Best Practices" guide for companies using facial recognition technology.[6] In the guide, the Commission underscores the importance of companies' obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information from digital photographs.

21.     As explained below, Defendants failed to obtain consent from— or even to inform— *anyone* when it illegally scraped over three billion photographs from the internet and obtained, stored, used, sold, and disseminated Plaintiffs' and Class Members' protected biometrics.

## II. Illinois's Biometric Information Privacy Act

22.     In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers[7] or biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

---

(2012),    *available    at*    https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf (last visited May 20, 2020).

[5]     *Id.*

[6]     *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade       Commission       (Oct.       2012),       *available       at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf (last visited May 20, 2020).

[7]     BIPA's definition of "biometric identifier" expressly includes information collected about the geometry of the face (i.e., facial data obtained through facial recognition technology). *See* 740 ILCS 14/10.

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

23.     Section 15(a) of BIPA also provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

24.     Section 15(c) of BIPA provides:

No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(c).

25.     Section 15(d) of BIPA provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

26.     As alleged below, Defendants' practices of collecting, storing, using, selling, and disseminating Class Members' biometric identifiers and information violate all three prongs of § 15(b) of BIPA.  Defendants' failure to provide a publicly available written policy regarding their schedule and guidelines for the retention and permanent destruction of individuals' biometric information also violates § 15(a) of BIPA.  Defendants' unauthorized disclosure of biometrics to third parties also violates § 15(d) of BIPA, and their unauthorized sale of these biometrics violates § 15(c) of BIPA.

### III.  Defendants Violate Illinois's Biometric Information Privacy Act

27.     Facial recognition technology is based on algorithms that learn how to recognize human faces and the hundreds of ways in which each one is unique.  To do this well, the algorithms must be fed vast quantities of images of a diverse array of faces.  To satisfy the ever-growing demand for myriad high-resolution facial images, unchecked companies have begun turning to the internet, where photographs are sometimes taken without the photographer's or subject's knowledge or consent.  This has been called the "dirty little secret" of facial recognition.  Researchers often just grab whatever images they can find "in the wild."

28.     Clearview has done this and more.  It created software that searches millions of webpages, including social media sites such as Twitter, Facebook Venmo, Google, Instagram, and YouTube, and downloaded those images, or scraped them, along with corresponding information from the website, into its database.  Clearview scraped these images secretly, without the knowledge or consent of the users who uploaded the photographs or the owners of the websites.

Clearview's scraping practices violated many websites' policies, leading several, including Facebook, YouTube, LinkedIn, and Twitter, to send cease and desist demands to Clearview.

29.     Defendants have since acquired at least 3 billion photographs for use with Defendants' social recognition software, and as of October of 2019, Clearview has boasted that it adds 40-50 million new images for users to search *every day*.

30.     Once Clearview scrapes a photograph, that image and its corresponding data are kept in a database, regardless of whether the user who uploaded the image later removes it or makes it private.  Likewise, many of the images Clearview has scraped include faces of more than the individual who uploaded the image, underscoring the real possibility that Plaintiffs' and Class Members' faces also appear in images online that they did not upload themselves and may not know exist.

31.     Once acquired, Clearview runs its proprietary facial recognition software on the photographs it scraped from the internet, which software works by scanning a human face or an image thereof and extracting "face templates" (or "face prints")— highly detailed geometric maps of the face.  Clearview creates these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces that appear in the photos. Every face template that Clearview extracts is unique to an individual in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

32.     Defendants are then able to use the database, replete with at least three billion photographs and at least as many face templates, to identify any subject whose face appears in the database by simply running a photograph of the subject's face through its facial recognition software (or by taking a new picture of the subject through the application), extracting the face template, and matching the face template to those in the database.  This process can be completed

in several seconds. When a match is made, the software presents the user with additional photographs of the subject and information associated with the photographs, which may include the subject's name, identify the subject's social media pages, the location said images appeared on the web, the subject's home and work addresses, and other identifying information.

33.    To underscore the breadth of photographs and face templates in the Clearview database, the population of the United States in 2019 was reportedly 328.2 million- a fraction of the photographs in the database. Defendant Hoan Ton-That has stated that his software has never failed to detect a match during a live demonstration. A photograph from Clearview's marketing materials emphasizing the sheer size of its database is below:



34.    Defendants then sell access to the software and database, for profit, to various third parties that Clearview previously represented as consisting solely of law enforcement. Reportedly, Clearview has provided access to over 600 state and federal law enforcement agencies across the country, "paying tens of thousands of dollars apiece", or up to $50,000 for a two-year

deal to access to the database, including, reportedly, the Chicago Police Department and the Springfield, Illinois Police Department.

35.     Defendants' assurances that the software was only being offered to law enforcement was belied by a data breach in February of 2020, when Clearview's full client list was disclosed, revealing that the software was used by more than 2,200 law enforcement departments, government agencies, individuals, and private companies across 27 countries. Leaked information reportedly includes the number of log-ins, the number of accounts each user created, the number of searches each user ran, and the date of the last search for each user. This data breach established that Clearview cannot protected the highly sensitive biometrics that it has illegally obtained.

36.     Clearview has shared access to its database with countless other entities, including, a labor union, real estate firm, retailers such as grocery stores, Best Buy, Macy's, Kohl's, Wal-Mart, Albertsons stores, and Home Depot, Clearview's staff, their colleagues, families, and friends, potential investors and clients, investment firms, high schools and universities, the NBA, banks including Wells Fargo and Bank of America, mobile carriers, venture capital firms, large gyms, entertainment companies, casinos, and even a manufacturer of augmented reality glasses in furtherance of a partnership to explore smart glasses equipped with Defendants' facial recognition technology. Many who have used the software were not formal clients, having been granted access via free trials.

37.     Moreover, the client list revealed the extent of governments' use of the software, including users such as the Illinois Secretary of State's Office, FBI, Customs and Border Protection, Immigration and Customs Enforcement, Secrete Service, DEA, CIA, Interpol, and potentially the White House.

38. Clearview's facial recognition software was reportedly sold to clients in Europe, the Middle East, Asia Pacific, and South America, including states with a record of human rights violations, including Saudi Arabia and the United Arab Emirates.

39. In addition to providing access to third parties, upon information and belief, Clearview reportedly maintains the capacity to monitor its users' activity of the software. For example, when a law enforcement agency uploaded a picture of a journalist to run a search, Clearview called to ask if it was talking to the media.

40. Defendant Ton-That admitted that Clearview has been receiving a "constant stream of cyber intrusion attempts." A report published in April of 2020 brought to light a second data breach, further proving Defendants' inability to safeguard the highly sensitive biometrics they illegally possess. Reportedly, a misconfigured server exposed Clearview's internal files, apps, and source code for anyone on the internet to find. The source code could be used to compile and run Clearview's facial recognition software from scratch and without access.

41. Worse yet, Clearview tried to pay the researcher who discovered the vulnerability to conceal his findings via a non-disclosure agreement, which payment the researcher declined.

42. Gurbir Grewal, New Jersey Attorney General, has instructed its police department to halt use of the Clearview's database until further investigation, stating that "what I am opposed to is the wide-scale collection of biometric information, and the use of it without proper safeguards by law enforcement." Other police departments, including in San Diego, have been instructed to stop using Clearview's facial recognition software.

43. Senator Edward J. Markey has remarked that Clearview's software "appears to pose particularly chilling privacy risks … capable of fundamentally dismantling Americans' expectation that they can move, assemble, or simply appear in public without being identified,"

and could enable those with nefarious agendas. Other legislatures and the United States House of Representatives' Committee on Science, Space, and Technology have raised similar concerns.

## IV. Hoan Ton-That and Richard Schwartz' Violations of Illinois's Biometric Information Privacy Act

44. Defendant Hoan Ton-That is a founder and the CEO of Clearview and often serves as the company's public face in the media. For instance, Hoan Ton-That appeared on an interview with CBS This Morning and defended Clearview's illegal practices by stating that "there is a first amendment right to public information." Defendant Richard Schwartz is also a founder of Clearview and, upon information and belief, an officer, director, or principal of Clearview. Upon information and believe, Schwartz paid for servers and other costs in furtherance of Clearview's operations.

45. Hoan Ton-That and Richard Schwartz are private entities as set forth under 740 ILCS 14/10, which expressly defines private entities to include individuals.

46. As founders and officers, directors, or principals of Clearview, Defendants Ton-That's and Defendant Schwartz's oversight and direction with respect to Clearview's business cannot be overstated. Individual Defendants' knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Complaint. Upon information and belief, they conspired with each other and with the owners, shareholders, officers, and directions of Clearview and CDW ("Co-Conspirators") to carry out the violations of BIPA set forth herein. The Individual Defendants and Co-Conspirators had knowledge of this illegal operation, agreed to— and did— carry out and share in the labor to bring their illegal scheme into fruition, and agreed to and did share in the resulting profits. As such, the Individual Defendants and Co-Conspirators are

13

responsible as joint tortfeasors for the acts and damages caused by others as set forth in this Complaint.

## V. CDW's Violation of Illinois's Biometric Information Privacy Act

47.     Although the full extent of CDW's dealings with Clearview are yet to be revealed, upon information and belief, CDW, a Vernon Hills-based technology firm, has worked with Clearview AI to develop and sell its propriety facial recognition software.  The Chicago Police Department ("CPD") has reportedly entered into a two-year, $49,875 contract on January 1, 2020 with CDW to use Clearview's facial recognition technology.  For at least two months before that, select officials at the CPD's Crime Prevention and Information Center ("CPIC") used the software on a trial basis after another law enforcement agency recommended the technology. According to the CPD, at least thirty CPIC officials have access to and, upon information and belief, continue to use the technology.

48.     As such, CDW has violated BIPA, by collecting, storing, using, selling, and disseminating Plaintiffs' and Class Members' biometrics without establishing the requisite schedules and guidelines in violation of Section 15(a) of BIPA; by collecting, storing, using, selling, and disseminating the biometrics without informing individuals that their biometrics were being used, without providing the requisite notice, and without receiving the requisite consent in violation of Section 15(b) of BIPA; by selling individuals' biometrics in violation of a Section 15(c) of BIPA; and by disseminated the biometrics in violation of 15(d) of BIPA.

## VI. Plaintiffs' Experiences

49.     Plaintiff Marron has at all relevant times maintained several social media accounts, including those on Facebook, Instagram, Snapchat, and TikTok.  Plaintiff Daker,

likewise, has at all relevant times maintained several social media accounts, including those on Facebook and Google Photos.

50.     Plaintiffs have routinely uploaded photographs of themselves depicting their faces to these social media platforms.  These photographs were taken in Illinois and were uploaded to these social media accounts from computers or other devices within Illinois and were publicly available at the time of their upload.  Plaintiffs created and managed these social media accounts from within Illinois.  Further, Plaintiffs' faces appear in photographs uploaded to social media by their friends and family, who also reside in Illinois.

51.     Upon information and belief, the photographs Plaintiffs uploaded to social media, and the photographs uploaded to social media by others depicting Plaintiffs' faces, contained various metadata, including that which reflects Plaintiffs location in Illinois.

52.     As such, upon information and belief, Plaintiffs believe that these photographs have been obtained by Defendants and included in Clearview's database of over 3 billion face photographs and at least as many face templates, to be queried by Clearview's users.

53.     Plaintiffs never consented, agreed, or gave permission – written or otherwise – to Clearview to scrape their images from their social media profiles or to Defendants to obtain or use their protected biometrics.  Indeed, Plaintiffs did not even know this was possible.

54.     Defendants did not provide Plaintiffs, and Plaintiffs never signed, a written release allowing Defendants to collect or store their unique biometric identifiers or biometric information.

55.     Likewise, Defendants never provided Plaintiffs with an opportunity to prohibit or prevent the collection, storage, use, sale, or dissemination of their unique biometric identifiers or biometric information.

56. Nevertheless, Defendants took copies of Plaintiffs' photographs containing their scanned facial geometry, created unique face templates corresponding to Plaintiffs, stored Plaintiffs' biometrics and corresponding information in its database, and sold the same to third-parties for profit, all in direct violation of BIPA.

## CLASS ALLEGATIONS

57. **Class Definition**: Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of a class of similarly situated individuals, defined as follows (the "Class" and "Class Members"):

> All citizens of Illinois who had their biometric identifiers, including scans of face geometry, collected, captured, received, used, disseminated, or sold obtained by Defendants from photographs.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants' or their parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

58. **Numerosity**: The number of persons within the Class is substantial, believed to amount to millions of persons. It is, therefore, impractical to join each member of the Class as named plaintiffs. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action

mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

59. **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a) whether Defendants collected or otherwise obtained Plaintiffs' and Class Members' biometric identifiers or biometric information;

(b) whether Defendants properly informed Plaintiffs and Class Members that it collected, used, and stored their biometric identifiers or biometric information;

(c) whether Defendants obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiffs' and Class Members' biometric identifiers or biometric information;

(d) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(e) whether Defendants used Plaintiffs' and Class Members' biometric identifiers or biometric information to identify them;

(f) whether Defendants wrongfully disclosed Plaintiffs' and Class Members' biometric identifiers or biometric information to third parties;

(g) whether Defendants' violations of BIPA were committed intentionally, recklessly, or negligently;

(h) whether Defendants sold, leased, traded, or otherwise profited from Plaintiffs' and Class Members' biometric identifiers or biometric information; and

(i) whether Defendants conspired for the purpose of accomplishing some concerted action either for an unlawful purpose or lawful purpose by unlawful means.

60. **Adequate Representation**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action

litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs can fairly and adequately represent and protect the interests of such a Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

61. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with BIPA.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiffs and the Class, against all Defendants)**

62. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63. BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b) (emphasis added).

64. Clearview is a Delaware Corporation, CDW is an Illinois Limited Liability Company, and Hoan Ton-That and Richard Schwartz are individuals. As such, all Defendants are "private entities" under BIPA. *See* 740 ILCS 14/10.

65. Plaintiffs and Class members are individuals who had their "biometric identifiers," including scans of their face geometry, collected, captured, received, or otherwise obtained by Defendants from photographs that Defendants used, stored, sold, and disseminated, which photographs were from within the state of Illinois. *See* 740 ILCS 14/10.

66. Defendants violated BIPA by systematically and automatically collecting, using, storing, profiting from, and distributing Plaintiffs' and Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

67. Defendants violated BIPA by failing to properly inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being "collected or stored" in connection with Clearview's facial recognition software, and failing to inform Plaintiffs or Class members in writing of the specific purpose and length of term for which their biometric

identifiers and/or biometric information were being "collected, stored and used" as required by 740 ILCS 14/15(b)(1)-(2).

68. Defendants violated BIPA by not publicly providing a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or Class members, as required by BIPA. *See* 740 ILCS 14/15(a).

69. Defendants violated BIPA by wrongfully selling, leasing, trading, or otherwise profiting from the highly sensitive biometric identifiers and/or biometric information of Plaintiffs or Class Members. *See* 740 ILCS 14/15(c).

70. Defendants violated BIPA by wrongly disclosing, redisclosing, or otherwise disseminating the highly sensitive biometric identifiers and/or biometric information of Plaintiffs or Class members with third parties. *See* 740 ILCS 14/15(d).

71. By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendants violated BIPA and the rights of Plaintiffs and each Class member to keep private these biometric identifiers and biometric information.

72. Individually and on behalf of the proposed Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use, sale, and dissemination of biometric identifiers and biometric information as described herein; (2) statutory damages of $5,000.00 for each of the intentional and reckless violations of BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Chris Marron and Maryann Daker, individually and on behalf of the proposed Class, respectfully request that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B.    Declaring that Defendants' actions, as set forth above, violate BIPA, 740 ILCS l4/1, *et seq.*;

C.    Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E.    Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.    Awarding such other and further relief as equity and justice may require

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: May 20, 2020

By: */s/ Katrina Carroll*
Katrina Carroll
kcarroll@carlsonlynch.com
Kyle A. Shamberg
kshamberg@carlsonlynch.com
Nicholas R. Lange
nlange@carlsonlynch.com
**CARLSON LYNCH LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265

Gary Lynch
glynch@garylynch.com
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243

Richard R. Gordon
Gordon Law Offices, Ltd.
111 W. Washington St.
Ste. 1240
Chicago, IL 60602
(312) 332-5200
rrg@gordonlawchicago.com

*Counsel for Plaintiffs and the Putative Class*